IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ARTUR TCHIBASSA, <br> Reg. No. 25340-069, <br> Petitioner, <br><br> v. <br><br> SCOTT WILLIS, <br> Respondent. | § § § § § § § § | EP-17-CV-272-FM |

## MEMORANDUM OPINION AND ORDER

Artur Tchibassa seeks relief from his sentence through a *pro se* "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241 under 2255(e) Savings Clause" (ECF No. 1). Tchibassa, a federal prisoner at the La Tuna Federal Correctional Institution in Anthony, Texas,[1] asserts the trial court erred when it failed to resentence him after the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), and denied his motion to dismiss his indictment on speedy trial grounds.[2] He also invokes the *strictissimi juris* standard—which would require the prosecution to strictly show his personal criminal purpose—to proclaim his actual innocence. After reviewing the record and for reasons discussed below, the Court will, on its own motion, dismiss Tchibassa's petition, pursuant to 28 U.S.C. § 2243.[3]

## BACKGROUND AND PROCEDURAL HISTORY

Tchibassa's criminal case arose from the 1990 hostage-taking of a United States citizen, Brent

---

[1] Anthony is located in El Paso County, Texas, which is within the territorial limits of the Western District of Texas, El Paso Division. 28 U.S.C. § 124(d)(3) (2012).

[2] Pet'r's Pet 1, ECF No. 1.

[3] 28 U.S.C. § 2243 (2012) ("A court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.").

Swan, in Angola by the Front for the Liberation of the Enclave of Cabinda ("FLEC"). Tchibassa acted as FLEC's foreign minister and chief spokesman during the negotiations for Swan's release with representatives of Swan's United States based employer, Chevron Overseas Petroleum, Inc. After completing the negotiations, Tchibassa signed the receipt for a ransom in goods given by Chevron to FLEC in exchange for Swan's release.

A grand jury in the United States District Court for the District of Columbia indicted Tchibassa in 1991 on one count of conspiracy to commit hostage-taking and one count of hostage-taking.[4] Tchibassa remained at large in Zaire (now the Democratic Republic of the Congo) until his arrest in 2002. He went to trial in September 2003, where a jury found him guilty of both counts. The district court sentenced Tchibassa to concurrent terms of 60 months' imprisonment for the conspiracy and 293 months' imprisonment for the hostage-taking.

Tchibassa appealed on three grounds. First, he asserted the district court erred when it treated the United States Sentencing Guidelines as mandatory, in violation of *United States v. Booker*, 543 U.S. 220 (2005). Second, he maintained the government violated his Sixth Amendment right to a speedy trial by waiting until 2002—some eleven years after his indictment—to arrest and prosecute him. Finally, he argued the district court erred in admitting the testimony of Piotr Dietrich about a similar FLEC hostage-taking in 1994, but excluding the testimony of Martins Lietao about his participation in FLEC hostage negotiations in 1992 and 2001.

The District of Columbia Circuit Court of Appeals rejected Tchibassa's arguments and affirmed his convictions and sentences.[5]

---

[4] *See United States v. Tchibassa*, 1:91-CR-560-TFH-3 (D. D.C.).

[5] *See United States v. Tchibassa*, 452 F.3d 918 (D.C. Cir. 2006).

The D.C. Circuit reasoned the district court's treatment of the Guidelines as mandatory did not prejudice Tchibassa. It relied on its prior analysis in *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005), and explained that while the district court's treatment of the Guidelines as mandatory was plain error, Tchibassa could not obtain relief unless he showed the error affected his substantial rights. It observed the district court expressed its strong and unambiguous approval of the sentence's appropriateness on the record. The D.C. Circuit was therefore confident—even if the district court re-sentenced Tchibassa under the advisory Guidelines—the district court would not impose a materially more favorable sentence on him. Accordingly, the D.C. Circuit concluded Tchibassa could not show the *Booker* error affected his substantial rights.

The D.C. Circuit next held the eleven-year delay between Tchibassa's indictment and arrest did not violate his speedy trial rights. The D.C. Circuit explained it evaluated speedy trial claims using the four-factor balancing test in *Barker v. Wingo*, 407 U.S. 514 (1972).[6] These four factors included considerations of the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[7] In Tchibassa's case, the D.C. Circuit accepted the length of the delay as "presumptively prejudicial," which triggered its consideration of the other three *Barker* factors. Turning to the second factor, it found "the fault for the delay in arrest lay primarily with Tchibassa himself" because of his "continued residence in an area over which the United States had no control and little influence."[8] It ruled the third factor also favored the government, because Tchibassa learned of the charges against him in 1994, but did not assert his speedy trial rights until April 21, 2003, nine months

---

[6] *Id.* at 924.

[7] *Id.* (citing *Barker*, 407 U.S. at 530).

[8] *Id.* at 925–26.

after his arrest. Finally, the D.C. Circuit found under the fourth *Barker* factor that Tchibassa could not make a showing of "articulable prejudice," but instead relied solely on "presumptive prejudice," which, it explained, was inadequate.[9] Thus, the D.C. Circuit concluded the balance of the four *Barker* factors favored the government.[10]

Finally, the D.C. Circuit determined any error in the district court's admission of the testimony from Dietrich, and the exclusion of the testimony from Lietao, was harmless.

The Supreme Court denied Tchibassa's petition for a writ of certiorari.[11] A motion for collateral relief under 28 U.S.C. § 2255 followed.

Tchibassa's § 2255 motion largely rehashed the same issues raised in his direct appeal.[12] First, he asserted an entitlement to re-sentencing based on *Booker*. Second, he claimed his trial counsel provided ineffective assistance by failing to object to the application of the Guidelines as mandatory. Third, he argued his trial and appellate counsel failed to effectively argue the delay in bringing him to trial violated his speedy trial rights. Finally, he claimed the district court erred in admitting Dietrich's testimony, and excluding Lietao's testimony.

Tchibassa asserted an entitlement to re-sentencing because the district court sentenced him under the mandatory Guidelines regime, which the Supreme Court later deemed unconstitutional in *Booker*. Notwithstanding the D.C. Circuit's prior rejection of his claim in his direct appeal based on its analysis under *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005), Tchibassa argued an intervening change in

---

[9] *Id.* at 927.

[10] *Id.*

[11] *Tchibassa v. United States*, 549 U.S. 1298 (2007).

[12] *See United States v. Tchibassa*, 646 F. Supp. 2d 144 (D.D.C. 2009).

law invalidated *Coles*. To support his claim, he cited the Supreme Court's line of decisions—*Rita v. United States*, 551 U.S. 338 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Spears v. United States*, 129 S. Ct. 840 (2009); and *Nelson v. United States*, 129 S. Ct. 890 (2009)—which elaborated on the post-*Booker* sentencing regime. He maintained these cases undercut the analytic framework of *Coles*, which he insisted focused excessively on the rigid technical workings of the Guidelines, implicitly ratified the district court's presumption that the Guidelines ranges were reasonable, and did not give primacy to the sentencing factors set forth in 18 U.S.C. § 3553(a). In light of this new case law, Tchibassa argued, re-sentencing was warranted.

The district court rejected this argument, concluding that none of the cases cited by Tchibassa directly impacted the *Coles* holding. "Indeed, the D.C. Circuit applied *Coles* as good law ... after *Rita*, *Kimbrough*, and *Gall* were decided."[13] Furthermore, it noted the *Rita* / *Kimbrough* / *Gall* / *Spears* / *Nelson* chain of cases were decided after the Supreme Court denied Tchibassa's petition for a writ of certiorari, and asserted they were not applicable retroactively to his case on collateral review.

Tchibassa then claimed his trial counsel gave ineffective assistance by not objecting to the treatment of the Guidelines as mandatory. In rejecting this claim, the district court observed it "sentenced Tchibassa on February 27, 2004, eleven months prior to the release of the *Booker* decision on January 12, 2005."[14] It explained "[f]ailure to predict a change in the law does not generally render counsel's performance deficient."[15]

Tchibassa next argued his trial and appellate counsel provided ineffective assistance by failing to

---

[13] *Id.* at 148 (citing *United States v. Brown*, 516 F.3d 1047 (D.C. Cir. 2008)).

[14] *Id.* at 150–51.

[15] *Id.* at 151 (citing *United States v. Williams*, 374 F. Supp. 2d 173, 175 (D. D.C. 2005)).

demonstrate how the eleven-year delay from his indictment to the start of his trial prejudiced him. The district court rejected this argument after first noting Tchibassa's counsel filed a motion to dismiss the indictment on speedy trial grounds, which it court rejected after conducting an evidentiary hearing. The district court also noted the D.C. Circuit recognized the eleven-year interval was significant, but held that the delay did not violate Tchibassa's speedy trial rights.[16] The district court concluded Tchibassa's claim failed because he did not show his counsel's performance was either deficient or prejudiced his cause.[17]

Finally, Tchibassa averred the district court ruled wrongly under Federal Rule of Evidence 404(b) in admitting the Dietrich testimony and excluding the Lietao testimony. The district court noted the D.C. Circuit had already denied the claim, and explained "'[c]laims already raised and rejected on direct review will not be entertained on a § 2255 motion absent extraordinary circumstances such as an intervening change in the law.'"[18] The district court found no extraordinary circumstances and concluded Tchibassa's claim was procedurally barred.

In his § 2241 petition, Tchibassa renews two old claims and asserts one new claim. First, he once again posits an entitlement to re-sentencing. He contends the Court wrongly sentenced him under the mandatory Guidelines regime, which the Supreme Court later deemed unconstitutional in *Booker*. In support of his claim, he cites the same Supreme Court's line of decisions—*Rita / Kimbrough / Gall / Spears / Nelson*—which elaborated on the post-*Booker* sentencing regime. Second, he once again maintains the government violated his Sixth Amendment right to a speedy trial by waiting eleven years to

---

[16] *Tchibassa,* 452 F.3d at 922–27.

[17] *Tchibassa,* 646 F. Supp. 2d at 151.

[18] *Id.* at 153 (quoting *United States v. Stover,* 576 F. Supp. 2d 134, 141 (D. D.C. 2008) (citations omitted)).

arrest and prosecute him. Finally, he invokes the *strictissimi juris* standard to proclaim his actual innocence. He opines the FLEC had both legal and illegal aims. He declares "he was engaged as Foreign Affairs Secretary for F.L.E.C., only in lawful advocacy to procure the release of Brent Swan, rather than conspiracy to commit hostage-taking."[19]

In this context, the *strictissimi juris* standard would require a court to judge a defendant's intent in the strictest manner. The standard arose from the Supreme Court's decisions in *United States v. Scales*, 367 U.S. 203 (1961), and *United States v. Noto*, 367 U.S. 290 (1961). These cases involved prosecutions for alleged violations of the Smith Act.[20] The Smith Act proscribed, among other things, knowing membership in an organization which advocated the overthrow of the United States Government by force or violence.[21] The petitioners were both members of the Communist Party. They challenged the sufficiency of the evidence that the Communist Party, at the time of their membership, advocated the overthrow of the United States Government.[22] The Supreme Court also addressed the requirement that petitioners have a "personal criminal purpose to bring about the overthrow of the Government by force and violence."[23]

In *Scales*, the Court noted, "a ... blanket prohibition of association with a group having both legal and illegal aims" would present "a real danger that legitimate political expression or association would be

---

[19] Pet'r's Pet. 14.

[20] 18 U.S.C. § 2385 (2012).

[21] *Scales*, 367 U.S. at 205.

[22] *Id.* at 230; *Noto*, 367 U.S. at 291.

[23] *Noto*, 367 U.S. at 299.

impaired."[24] Instead, "[t]here must be clear proof that a defendant 'specifically intend(s) to accomplish (the aims of the organization) by resort to violence.'"[25] In *Noto*, the Court said, specific intent "must be judged *strictissimi juris*" to avoid punishment for mere association with the legitimate aims of an organization.[26]

"'Courts use *strictissimi juris* only under very special circumstances.'"[27] In *United States v. Dellinger*, the Seventh Circuit explained:

> When group activity out of which the alleged offense develops can be described as a bifarious undertaking, involving both legal and illegal purposes and conduct, and is within the shadow of the first amendment, the factual issue as to the alleged criminal intent must be judged *strictissimi juris*. This is necessary to avoid punishing one who participates in such an undertaking and is in sympathy with its legitimate aims, but does not intend to accomplish them by unlawful means. Specially meticulous inquiry into the sufficiency of proof is justified and required because of the real possibility in considering group activity, characteristic of political or social movements, of an unfair imputation of the intents or acts of some participants to all others.[28]

As the Court noted above, Tchibassa was not prosecuted for his membership in FLEC, he was prosecuted on one count of conspiracy to commit hostage-taking and one count of hostage-taking. The evidence showed Tchibassa acted as the FLEC's foreign minister and chief spokesman during

---

[24] *Scales*, 367 U.S. at 229.

[25] *Id.* (quoting *Noto*, 367 U.S. at 299).

[26] *Noto*, 367 U.S. at 299–300; *see also NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) ("For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims.").

[27] *United States v. Sanders*, 211 F.3d 711, 722 (2d Cir. 2000) (quoting *United States v. Montour*, 944 F.2d 1019, 1024 (2d Cir.1991)).

[28] 472 F.2d 340, 392 (7th Cir. 1972).

negotiations for hostage Swan's release—after his kidnaping by FLEC's armed forces—with representatives of Swan's employer, Chevron. After completing the negotiations, Tchibassa signed the receipt for a ransom in goods given by Chevron to FLEC in exchange for Swan's release. The evidence does not support a conclusion that Tchibassa's intent was to support only FLEC's legal aims. On the contrary, it shows Tchibassa's intent was to support FLEC's illegal aim of kidnaping foreign nationals for the purpose of exchanging them for goods.

## APPLICALBE LAW

As a preliminary matter, the court must determine whether a claim is properly raised in a § 2241 petition. "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."[29]

"A section 2241 petition for habeas corpus on behalf of a sentenced prisoner attacks the manner in which his sentence is carried out or the prison authorities' determination of its duration."[30] To prevail, a § 2241 petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States."[31] A § 2241 petitioner may make this attack only in the district court with jurisdiction over his custodian.[32]

By contrast, a motion to vacate or correct a sentence pursuant to 28 U.S.C. § 2255 "'provides the

---

[29] 28 U.S.C. foll. § 2254 R. 4; see R. 1 ("The district court may apply any or all of these rules to a habeas corpus petition …").

[30] *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000) (citations omitted).

[31] 28 U.S.C. § 2241(c) (2012).

[32] *United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992).

primary means of collateral attack on a federal sentence.'"[33] Thus, relief under § 2255 is warranted for errors that occurred at trial or sentencing.[34] A § 2255 petitioner may only bring his motion in the district of conviction and sentence.[35]

Section 2255 does contain a "savings clause" which acts as a limited exception to these general rules. It provides that a court may entertain a petition for writ of habeas corpus challenging a federal criminal conviction if it concludes that filing a motion to vacate, set aside or correct sentence pursuant to § 2255 is inadequate to challenge a prisoner's detention.[36] A petitioner must satisfy a two-prong test before he may invoke the "savings clause" to address errors occurring at trial or sentencing in a petition filed pursuant to § 2241:

> [T]he savings clause of § 2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion.[37]

---

[33] *Pack*, 218 F.3d at 451 (quoting *Cox v. Warden*, 911 F.2d 1111, 1113 (5th Cir. 1990)).

[34] *See Cox*, 911 F.2d at 1114 (5th Cir. 1990) ("The district court's dismissal of these grounds clearly was proper because they concerned alleged errors that occurred at sentencing and, therefore, may be remedied under section 2255."); *Ojo v. INS*, 106 F.3d 680, 683 (5th Cir. 1997) ("Because all of the errors Ojo alleges [occurred before or during sentencing], they must be addressed in a § 2255 petition, and the only court with jurisdiction to hear that is the court that sentenced him."); *Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1131 (5th Cir. 1987) (explaining that, because defendant's claims attacked the constitutionality of his conviction and proof of his claims would undermine the validity of his conviction, his exclusive initial remedy was a motion under§ 2255).

[35] *Pack*, 218 F.3d at 452.

[36] *See* 28 U.S.C. 2255(e) ("An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, *unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*") (emphasis added).

[37] *Reyes-Requena v. United States*, 243 F.3d 893, 904 (5th Cir. 2001).

A petitioner must prove both prongs to successfully invoke the savings clause.[38] Thus, § 2241 is not a mere substitute for § 2255, and a petitioner bears the burden of showing the § 2255 remedy is inadequate or ineffective.[39]

With these principles in mind, the Court turns to Petitioner's claims.

## ANALYSIS

In his § 2241 petition, Tchibassa contends the Court wrongly sentenced him under the mandatory Guidelines regime, maintains the eleven-year delay from his indictment to the start of his trial violated his speedy trial rights, and invokes the *strictissimi juris* standard to proclaim his actual innocence. Tchibassa may proceed with an attack on the validity of his sentence under § 2241 only if he can meet both prongs of the stringent test for the § 2255(e) "savings clause."[40]

The first prong of the test is, essentially, an actual innocence requirement. The "core idea is that the petitioner may be have been imprisoned for conduct which was not prohibited by law."[41] To meet the first prong, a petitioner must rely on a retroactively applicable Supreme Court decision which establishes that he may have been convicted of a nonexistent offense.[42] In this case, the Supreme Court decided all of the cases Tchibassa cites to support his three claims before he filed his § 2255 motion. With regard to his first two claims—the Court wrongly sentenced him under the mandatory Guidelines regime and the

---

[38] *Padilla v. United States*, 416 F.3d 424, 426 (5th Cir. 2005).

[39] *Reyes-Requena*, 243 F.3d at 901 (citing *Pack*, 218 F.3d at 452; *Kinder v. Purdy*, 222 F.3d 209, 214 (5th Cir. 2000)).

[40] *Kinder*, 222 F.3d at 212.

[41] *Reyes-Requena*, 243 F.3d at 903.

[42] *Id.* at 904.

eleven-year delay from his indictment to the start of his trial violated his speedy trial rights—the district court determined they were not applicable retroactively to his case on collateral review.[43] With regard to his third claim—the Court should apply a *strictissimi juris* standard—the Supreme Court discussed this standard in two cases decided in 1991. Tchibassa could have raised this third issue at trial, on appeal, and in his § 2255 motion. Thus, Tchibassa has not identified a retroactively applicable Supreme Court decision which establishes he may have been convicted of a nonexistent offense.

The second prong of the test is a foreclosure requirement. The petitioner must show his claims were foreclosed by circuit law when he could have raised them at trial, on appeal, or in a § 2255 motion. In this case, Tchibassa raised—and the district and appellate courts rejected—his first two claims. Tchibassa fails to identify any subsequent change in the law retroactively applicable to his case which would have changed this outcome. His first two claims were not foreclosed when he raised them in his direct appeal and in his § 2255 motion. Furthermore, Tchibassa could have raised—and the courts could have considered—his third claim at trial, on appeal, or in a § 2255 motion. His third claim was not foreclosed at the time he could have raised it.

Since Tchibassa's claims do not meet the stringent requirements of the savings clause, the Court will not allow him to proceed pursuant to § 2241.

## CONCLUSION AND ORDERS

As explained above, § 2241 does not provide authority for the Court to address Tchibassa's claims. The Court will, therefore, dismiss his § 2241 petition as frivolous. To the extent his petition may be construed as a second or successive § 2255 motion, the Court will dismiss it for lack of jurisdiction.[44]

---

[43] *Tchibassa*, 646 F. Supp. 2d at 147.

[44] *Ojo*, 106 F.3d at 683.

Tchibassa may, however, ask the D.C. Circuit to certify his petition as a second or successive § 2255 motion, as provided in 28 U.S.C. § 2244. The Court accordingly enters the following orders:

**IT IS ORDERED** that Artur Tchibassa's *pro se* "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. Section 2241 under 2255(e) Savings Clause" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT.**

**IT IS ALSO ORDERED** that to the extent Artur Tchibassa's § 2241 petition is construed as a successive § 2255 motion, he is denied a **CERTIFICATE OF APPEALABILITY.**[45]

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED.**

SIGNED this 16 day of October, 2017.

*[signature]*
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

---

[45] *See* 28 U.S.C. foll. § 2255 R. 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").